State *v.* Jackson—187 Ind. 694.

## STATE OF INDIANA *v.* JACKSON.

[No. 23,428.    Filed December 10, 1918.]

1. INDICTMENT AND INFORMATION.—*Motion to Quash.—Selection of Grand Jury.*—Irregularity in the selection of a grand jury, under §1668 Burns 1914, Acts 1913 p. 15, or in the filling of vacancies therein, under §544a Burns 1914, §519 R. S. 1881, cannot be presented by a motion to quash the indictment, where it purports to have been returned by a legal grand jury and no defects appear upon its face, since §2065 Burns 1914, §1759 R. S. 1881, providing grounds for a motion to quash, does not authorize the court to search the record preceding the indictment.    p. 697.

2. CRIMINAL LAW.—*Impaneling Grand Jury.—Plea in Abatement.*—Illegality or irregularity in the impaneling of a grand jury should be presented by plea in abatement.    p. 697.

3. CRIMINAL LAW.—*Appeal.—Scope of Review.*—Where the verdict, the form of which is unquestioned, rests upon two counts of the indictment, the court, on appeal, will not consider proceedings or evidence applicable to the remaining counts.    p. 698.

4. CRIMINAL LAW. — *Appeal. — Requested Instructions.* — Requested instructions, though applicable and correct in principle, were properly refused, where they were fully covered by other instructions given.    p. 698.

5. CRIMINAL LAW.—*"Venue".*—By "venue" is meant the county in which the criminal acts are alleged to have occurred.    p. 699.

6. CRIMINAL LAW.—*Venue.—Evidence.*—Venue is a mere fact requiring no more direct or convincing evidence to establish it than is required to prove any other essential fact.    p. 699.

From Lawrence Circuit Court; *Oren O. Swails,* Judge.

Prosecution by the State of Indiana against Ray Jackson.    From a judgment of conviction, the defendant appeals.    *Affirmed.*

*Boruff & Boruff* and *Robert L. Mellen,* for appellant.
*Ele Stansbury,* Attorney-General, *Elmer E. Hastings*
and *Dale F. Stansbury,* for the state.

MYERS, J.—The grand jury for Lawrence county, at
the November term, 1916, of the Lawrence Circuit Court
returned into that court an indictment in four counts
against appellant and one Spencer Smith, charging them
jointly with the crimes defined by §§2256, 2647 Burns
1914, Acts 1905 p. 584, §§367, 641.   Section 2256 reads
as follows:  "Whoever prescribes or administers to
any pregnant woman, or to any woman whom he sup-
poses to be pregnant, any drug, medicine or substance
whatever, with intent thereby to procure the miscar-
riage of such woman, or with like intent, uses or sug-
gests, directs or advises the use of any instrument or
means whatever, unless such miscarriage is necessary to
preserve her life, shall, on conviction, if the woman mis-
carries, or dies in consequence thereof, be fined not less
than one hundred dollars nor more than one thousand
dollars, and be imprisoned in the state prison not less
than three years nor more than fourteen years."

Section 2647 is as follows:   "Any person or persons
who shall unite or combine with any other person or
persons for the purpose of committing a felony, within
or without this state; or any person or persons who shall
knowingly unite with any other person or persons, body,
association or combination of persons, whose object is
the commission of a felony or felonies, within or without
this state, shall, on conviction, be fined not less than
twenty-five dollars nor more than five thousand dollars,
and imprisoned in the state prison not less than two
years nor more than fourteen years."

The first two counts of this indictment separately
charged appellant with the use of an instrument, in the
first a catheter, and in the second an instrument to the

grand jurors unknown, in and upon the body and womb of a woman who then was, and known to him to be, pregnant, thereby producing a miscarriage and death of such woman. The third and fourth counts each charged a conspiracy on the part of the two defendants to employ and use a certain instrument, in the third count stated to be a catheter, and in the fourth unknown to the grand jury, in and upon the body and womb of a woman then and by them known to be pregnant, with intent to procure a miscarriage of such woman. A motion to quash each count of the indictment was overruled followed by an application for separate trials, which was granted, and the state elected to try appellant first. The trial was had and appellant was convicted of the crime charged and defined by §2256, *supra.* His motion for a new trial was overruled, and thereupon he was adjudged to be imprisoned in the state prison at Jeffersonville for a period of not less than three years nor more than fourteen years, and that he be fined in the sum of $400. Upon appeal to this court the errors assigned are (1) the overruling of his motion to quash the indictment, and (2) the overruling of his motion for a new trial.

In support of his motion to quash, he insists that the record discloses that two members of the grand jury regularly drawn were by the court discharged from service for the term, and their places supplied upon an order of court to the sheriff to complete the panel from the bystanders, which was done. From this statement he contends that the grand jury was not selected according to law, and for that reason was illegally constituted.

Our attention is called to §1668 Burns 1914, Acts 1881 p. 557, as amended, Acts 1913 p. 15. This section provides the manner of drawing the names of persons to be summoned as grand jurors, and §544a Burns 1914, §519 R. S. 1881, was construed by this court in the case

of *Stipp* v. *State* (1918), *ante* 211, 118 N. E. 818, as providing the manner of filling the place of any one excused from jury service.

Whatever may be said for or against the manner of selecting the grand jury in the case at bar, it is sufficient to say that this question cannot be presented by a motion to quash. The indictment purports to have been returned by a legal grand jury, and, no apparent defects appearing upon its face, the motion to quash must fail. *Pittsburgh, etc., R. Co.* v. *State* (1912), 178 Ind. 498, 99 N. E. 801. It will not be claimed that the irregularities relied on appear from the indictment. We know of them only from the recitals in the transcript concerning the proceedings leading up to the impaneling of the grand jury and in no other way. Our statute provides the grounds available for a motion to quash, and neither of them authorizes the court to search the record prior to the indictment. §2065 Burns 1914, §1759 R. S. 1881; *Donahue* v. *State* (1905), 165 Ind. 148, 74 N. E. 996. Moreover, under §2063 Burns 1914, §1756 R. S. 1881, no indictment or affidavit shall be deemed invalid nor shall the same be set aside or quashed "for any * * * defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits." Appellant has not even attempted to show wherein any of his substantial rights have been affected by the irregularities of which he complains.

"If there was anything illegal or irregular in respect to the impaneling of the grand jury, appellant should have interposed such objections by plea in abatement." *Harris* v. *State* (1900), 155 Ind. 265, 276, 58 N. E. 75, 79.

Appellant, in support of his motion for a new trial earnestly insists that the trial court erred (1) in refusing to give the jury instructions Nos. 33, 36, and 42

tendered by him; and (2) that the venue as laid in the various counts of the indictment was not sustained by the evidence.

It will be noted that the verdict of the jury, the form of which is in no way questioned, rests upon the first two counts of the indictment. It is therefore unnecessary for us to give any attention to the proceedings or evidence applicable to the third and fourth counts.

3.

Instructions Nos. 33 and 36, and every principle of law therein stated, were fully covered and stated in various forms by instructions Nos. 27, 30, 31, 34 and 35 tendered by appellant, and by the court given to the jury. Under this state of the record it was not error to refuse the instructions, even though they stated correct principles of law and were applicable to the case. *Yetter* v. *Yetter* (1916), 185 Ind. 206, 110 N. E. 195; *Bray* v. *Tardy* (1914), 182 Ind. 98, 105 N. E. 772.

4.

Instruction No. 42 and the evidence concerning the proof of venue may be considered together. Instruction No. 42 reads as follows: "In every count of the indictment herein, it is charged that every material element of the offense was committed in Lawrence county, Ind. I instruct you that under such counts, the State must prove beyond reasonable doubt that each of said material elements was committed as charged in Lawrence county, Indiana, unless the venue has been so proven, it is your duty to acquit the defendant."

The indictment in this case alleges in substance that the overt act with intent to produce a miscarriage on the woman then pregnant, and also miscarriage and death of the woman, occurred in Lawrence county, Indiana.

Counsel for appellant earnestly assert that there is no evidence to show that the overt act which brought

about the miscarriage took place in the county as laid in the indictment.

This being a criminal prosecution, it will be conceded that the venue is one of the essential elements which must be proved in order to sustain a conviction. *Strickland* v. *State* (1908), 171 Ind. 642, 87 N. E. 12, and cases cited; *Garst* v. *State* (1879), 68 Ind. 101.

By the word "venue" we mean the county in which the criminal acts are alleged to have occurred. Originally venue indicated the county or political sub-

5. division of territory from which the jury was called; however, it has always been the law requiring the government or state, as the case

6. might be, to prove the venue in order to show jurisdiction of the court to try and determine the issue. While this is all true it must be kept in mind that proof of venue is a mere fact requiring no more direct or convincing evidence to establish it than is required to prove any other essential fact in the case. *Croy* v. *State* (1869), 32 Ind. 384; *Harlan* v. *State* (1893), 134 Ind. 339, 33 N. E. 1102.

We have carefully read the evidence as it appears in the record, and nowhere in it do we find a chance for an inference that any part of the crime with which appellant is charged took place in any county other than Lawrence. The parties to the alleged crime resided in that county. It unquestionably appears that in the afternoon of November 3, 1916, appellant and the girl for whose pregnant condition he was responsible left Bedford in an automobile for the purpose of seeing a doctor who had been engaged to produce an abortion on this eighteen-year old girl. They drove from Bedford over what is known as the Bedford and Leesville road to Leesville, and then into an alley of that town, and stopped at a barn of a certain resident doctor. The doctor met them in the alley, and, after a

few minutes conversation with him, they drove back to the road, and then toward Bedford, followed by the doctor in his car. Later, about five o'clock, the doctor returned from toward Bedford to Leesville. The dying statement of the girl shows that after leaving Bedford appellant informed her of his intention to see a doctor and "get rid of the child." They went to a doctor in a country town and thence they drove to a by-road off the main road. At the side of this road the doctor, by the use of certain instruments upon her person, performed the operation which caused her to miscarry. While the doctor used the instruments appellant held her hands and praised her for being brave and having a lot of courage. They then returned to Bedford. It further appears that soon after the girl arrived home she began to have severe pains, which continued to be more severe until the miscarriage occurred, and thereafter she was not without pain until her death which occurred about six o'clock in the morning of November 9. The evidence shows that a number of unimproved roads led off from the Bedford road within the first five miles out of Leesville toward Bedford. One of these roads, about two and one-half miles west and north of Leesville and toward Bedford, is known as a dirt road and described as leading nowhere, not traveled very much, more or less secluded, and more or less bordered by woods. The road is said to lead through to Zelma. All of the evidence relative to the doings of appellant and the girl on the afternoon the act was done which produced a miscarriage conclusively show that they were not out of Lawrence county. In view of the evidence to which we have briefly referred, the jury was warranted in finding that the venue as laid in the indictment was fully established by the evidence.

This conclusion from the evidence, and the fact that

the court gave instructions on the necessity of proving venue, compel us to hold that the trial court was justified in overruling appellant's motion for a new trial grounded on any specification here urged in its support. Judgment affirmed.

NOTE.—Reported in 121 N. E. 114. Time and method of objecting to sufficiency of indictment, 1 Ann. Cas. 479, 22 Cyc 417.